**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DAVID M. COOK, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:22-cv-01469-PX |
| USAA FEDERAL SAVINGS BANK, | * | |
| Defendant. | * | |

\*\*\*
<u>**MEMORANDUM OPINION**</u>

Pending in this banking dispute is Defendant USAA Federal Savings Bank's ("USAA") motion to dismiss the Amended Complaint. ECF No. 32. The motion is fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the motion is GRANTED in part and DENIED in part.

**I.  Background**

The Court construes the Amended Complaint facts as true and most favorably to Plaintiff David Cook, who proceeds pro se.[1] Cook maintains a checking account with USAA with which he can use related services such as the online money transfer system, Zelle. ECF No. 23 ¶¶ 9, 10. As a condition of banking with USAA, Cook agreed to the Federal Savings Bank Agreement ("FSB Agreement"). *Id.* ¶ 9. Particular to Zelle, Cook also accepted the Zelle Terms of Service ("Zelle TOS") to which Zelle, USAA, and Cook are parties. *See* ECF No. 32-2 at 96, 99. The

---

[1] Although the Court construes the pleadings generously, it need not ignore that Cook, who is acting pro se, is a licensed attorney. ECF No. 13 at 1; *see Polidi v. Bannon*, 226 F. Supp. 3d 615, 617 n.1 (E.D. Va. 2016) (collecting cases). Cook also attaches a declaration to his response. ECF No. 34-1. But, as the Court previously informed Cook, he cannot supplement his Complaint with facts in a responsive pleading. ECF No. 21; *see Zachair Ltd. v. Driggs*, 965 F. Supp. 741, 748 n.4 (D. Md. 1997); *McCray v. Equifax Consumer Servs., LLC*, No. RDB-18-0994, 2018 WL 4634195, at *2 (D. Md. Sept. 27, 2018). Accordingly, the Court will not consider any additional facts included in either the response or declaration.

two agreements collectively govern terms under which USAA provides money transfer services like Zelle.  *See id.*

Relevant here, the FSB Agreement includes an "Error Resolution Procedure" section, which mirrors the error resolution procedures set out in the Electronic Funds Transfer Act, 15 U.S.C. 1693 *et seq.*, (the "EFTA").  *See* ECF No. 32-2 at 59–60.  The Error Resolution Procedure section states in relevant part:

> In case of errors or questions about your electronic fund transfer, contact us as soon as you can . . . if you think your statement or receipt is wrong or if you need more information about a transfer listed on the statement or receipt. *We must hear from you no later than 60 days* after we have sent you the FIRST statement on which the problem or error appeared. When you contact us, please provide the following information:
>
> 1) Your name and account number,
> 2) A description of the error or the transfer you are unsure about,
> 3) A clear explanation why you believe it is an error or why you need more information, and
> 4) The dollar amount of the suspected error.
>
> . . .
>
> *We will determine whether an error occurred within 10 Business Days after we hear from you and will correct any error promptly.  If we need more time, however, we may take up to 45 days to investigate your complaint or question.  If we decide to do this, we will provisionally credit your account within 10 Business Days for the amount you think is in error*, so that you will have use of the money during the time it takes us to complete our investigation.
>
> We will tell you the results within three Business Days after completing its [sic] investigation.  If we decide that there was no error, we will send you a written explanation.

*Id.* (emphasis added).

As for Zelle transactions, the FSB Agreement states that those are "governed by separate terms and conditions," set forth in the Zelle TOS.  ECF No. 32-2 at 55.  The Zelle TOS, in turn, waives USAA's liability for any claims arising from Zelle transactions.  *See id.* at 101.  This provision states:

2

**15. Limitation of Liability:**

*Except as otherwise provided by regulation*, neither [USAA] nor Zelle® shall have *liability to you for any transfers of money*, including without limitation, (I) any failure, through no fault of [USAA] or Zelle® to complete a transaction in the correct amount, or (II) any related losses or damages . . . .

The service is intended for sending money to family, friends, and others whom you trust. You should not use Zelle® to send money to persons with whom you are not familiar or you do not trust. *Neither we nor Zelle® offer a protection program for authorized payments made through the service (for example, if you do not receive the goods or services that you paid for.).*

Except as otherwise provided herein and unless otherwise prohibited by law or regulation, in no event will [USAA] . . . *be liable for any damages whatsoever*, including, but not limited to any direct, incidental, consequential, special, exemplary or other indirect damages *arising out of (I) any transaction conducted through or facilitated by the service; (II) any claim attributable to errors, omissions, or other inaccuracies in the services described or provided,* (III) unauthorized access to or alteration of your transmissions or data, or (IV) *any other matter relating to the services described or provided.*

ECF No. 32-2 at 101 (capitalizations omitted and emphasis added).

One exception to this broad waiver pertains to "unauthorized" Zelle transfers. *See* ECF No. 32-2 at 100. In such circumstance, the Zelle TOS refers to the FSB Agreement's provisions regarding "Electronic Banking Services" and the related "Error Resolution Procedure" described above. *Id.* Last, the FSB Agreement makes clear that where the FSB Agreement and the Zelle TOS conflict, "the terms and conditions of the [Zelle] TOS" govern. *Id.* at 96.

On June 15 and 16, 2021, Cook transferred a total of $1,500 from his USAA checking account through Zelle to a third party. ECF No. 23 ¶ 15. Cook asserts that although he authorized the transfers, the third party had fraudulently induced him to send the money. *Id.* ¶¶ 15–16.

On June 17, 2021, Cook discovered he had been scammed and called USAA several times to discuss the transactions. ECF No. 23 ¶ 19. During these conversations, Cook told the

3

USAA representative sufficient information for USAA to identify his customer status and account number. *See id.* ¶ 19.a. Cook also told the USAA representative that the money had been transferred in error and specified the date and amount of the transfer. *Id.* ¶¶ 19.b–d. Cook next asked USAA to clarify the nature of the electronic fund transfers, to help recover the funds, and to prevent future fraud. *Id.* ¶ 19.f. USAA declined to investigate the fraud and told Cook that there was nothing the bank could do to recover the money. *Id.* ¶¶ 21.a–b.

After hearing no more from USAA, Cook again contacted the bank several times in November 2021. ECF No. 23 ¶ 23. During these conversations, Cook conveyed the same information as he did in June 2021. *Id.* In one such conversation, the USAA representative confirmed that USAA had never opened an investigation into the June 2021 transactions. *Id.* ¶¶ 24–25. Cook reiterated his request for USAA to investigate the circumstances surrounding the electronic fund transfers. *Id.* ¶ 23.

Having received no response from USAA, Cook again contacted the bank in March of 2022. ECF No. 23 ¶ 27. USAA responded in writing on March 30, 2022, informing Cook that it had opened an investigation earlier that month. *Id.* ¶ 28. USAA also implied that Cook had not alerted the bank to the fraud in a timely manner and urged Cook in the future to "notify [USAA] as soon as [the transfers] appear on [his] statement." *Id.* ¶ 29.

Cook next filed this lawsuit, alleging that USAA violated its obligations under the EFTA by failing to perform a timely investigation or take any other appropriate action in response to his report of alleged "unauthorized transactions." ECF No. 1 ¶¶ 20–23. USAA moved to dismiss the Complaint, *see* ECF No. 9, arguing that because Cook had authorized the two allegedly fraudulent transactions, Cook did not report an "unauthorized transaction" under the EFTA and thus his notification to USAA did not trigger any investigation requirement. ECF No. 9-1 at 3–5.

4

The Court agreed and granted USAA's motion but allowed Cook to amend his Complaint to cure the pleading deficiencies.  ECF No. 21.

On July 3, 2023, Cook filed an Amended Complaint, in which he repleads his EFTA claim, 15 U.S.C. § 1693f, but presses a different liability theory than the original Complaint.  ECF No. 23 ¶¶ 42–47 (Count I).  The Amended Complaint also adds claims for breach of contract (Count II), violation of the Maryland Consumer Protection Act, Md. Code, Com. Law § 13-301 *et seq.*, (Count III), and negligent misrepresentation (Count IV).  *Id.* ¶¶ 48–72.

USAA now moves to dismiss all claims once again.  ECF No. 32.  The Court considers the sufficiency of each claim in turn.

**II.     Standard of Review**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) "tests the sufficiency of the complaint."  *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007).  The Court "accept[s] the factual allegations in the complaint as true and construe[s] them in the light most favorable to the nonmoving party."  *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).  However, the "Federal Rules do not require courts to credit a complaint's conclusory statements without reference to its factual context."  *Ashcroft v. Iqbal*, 556 U.S. 662, 686 (2009).  Nor can courts "accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S. 265, 286 (1986); *see Iqbal*, 556 U.S. at 663 (". . . the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The Court must be able to deduce "more than the mere possibility of misconduct" and the facts of the

complaint, accepted as true, must demonstrate that the plaintiff is entitled to relief. *Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd as modified*, 659 F. App'x 744 (4th Cir. 2016).

### III. Analysis

#### A. The EFTA Claim (Count I)

The Amended Complaint alleges that USAA violated the EFTA by failing to supply Cook with requested additional information or clarification regarding the two electronic fund transfers, and in failing investigate or provisionally credit his account as required under 15 U.S.C. §§ 1693f(b) & (c). ECF No. 23 ¶ 19.f. USAA, in turn, contends that the Amended Complaint fails to support the "conclusory allegation" that Cook requested "additional information or clarification concerning an electronic fund transfer." ECF No. 32-1 at 6.

The EFTA provides "a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems." 15 U.S.C. § 1693(b). Congress enacted the EFTA to "protect 'individual consumer rights' in the context of electronic fund transfers." *Curtis v. Propel Property Tax Funding, LLC*, 915 F.3d 234, 241 (4th Cir. 2019) (quoting 15 U.S.C. § 1693(b)). Financial institutions must comply with the statute and its animating regulations or face potential suit from the affected customer. *See* 15 U.S.C. § 1693m.

Relevant here, the EFTA imposes on a financial institution the duty to investigate alleged erroneous electronic fund transfers. *See* 15 U.S.C. § 1693f(a) (the "financial institution shall investigate the alleged error, determine whether an error has occurred, and report or mail the results of such investigation and determination to the consumer within ten business days."). The EFTA enumerates seven qualifying "errors" that trigger the investigation and resolution procedures. *See id.* § 1693f(f)(1)–(7). One of these qualifying "errors" is a "consumer's request

for additional information or clarification concerning an electronic fund transfer." *Id.* § 1693f(f)(6); *see also* 12 C.F.R. App'x Supp. I to Part 1005 § 1005.11, 11(a). As to this, the financial institution's obligations are triggered when the consumer: "(1) notifies the bank of the account number and holder; (2) 'indicates the consumer's belief that the documentation . . . contains an error and the amount of such error'; and (3) 'sets forth the reasons for the consumer's belief.'" *Ali v. USAA Federal Savings Bank*, No. 16-00420-PHX-JAT, 2016 WL 5464602, at *4 (D. Ariz. Sept. 29, 2016) (quoting 15 U.S.C. § 1693f(a)). This means that once the consumer requests additional information or clarification about an electronic fund transfer in the manner proscribed in Section 1693f(a), the financial institution must investigate and "notify the consumer of the results of such investigation." *See id.* (acknowledging that an "error" can exist under 15 U.S.C. § 1693f(f)(6) "simply because Plaintiff requested additional information and documentation and . . . did not receive that documentation.").

If a financial institution determines that no error occurred, "it shall deliver or mail to the consumer an explanation of its findings within 3 business days after the conclusion of its investigation," and upon the consumer's request, "promptly deliver or mail . . . reproductions of all documents which the financial institution relied on." 15 U.S.C. § 1693f(d). If the investigation cannot be completed within ten business days, the institution must "provisionally recredit the consumer's account for the amount alleged to be in error . . . pending the conclusion of its investigation." *Id.* § 1693f(c). Regardless, the statute requires the financial institution to complete the investigation within 45 days "after receipt of the notice of the error." *Id.* Stated otherwise, a financial institution's failure to respond to a consumer's request for information or clarification regarding an electronic fund transfer violates the EFTA's procedural requirements. *See Ali*, 2016 WL 5464602, at *4; 15 U.S.C. § 1693m.

7

Despite USAA's assertions to the contrary, Cook plausibly avers he reported a qualifying error in that he requested additional information and clarification about the two electronic fund transfers.  *See* ECF No. 23 ¶ 19.f.i.  The Amended Complaint does not just allege that Cook asked for additional information in a conclusory manner, as USAA contends.  *See* ECF No. 23; ECF No. 32-1 at 6.  Rather, it avers the particulars of his conversations with USAA on June 17, 2021, to include that Cook provided USAA with information needed to identify him and his account; that he described the "erroneous" Zelle transfers, to include the type, date, and amount of the transactions; and that he then asked for additional information or clarification about the transactions.  *See* ECF No. 23 ¶ 19.  These factual allegations are sufficient to "nudge" the claim "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.

In reply, USAA also asks the Court to read the statute to require "that the additional [requested] information or clarification [under Section 1693f(f)(6)] must be necessary to allow a consumer to determine whether another error in subsection (f) has occurred."  ECF No. 35 at 3.  The Court declines to read this additional requirement into the statute.  When "deciding questions of statutory interpretation," the Court always begins with the statutory text.  *Othi v. Holder*, 734 F.3d 259, 265 (4th Cir. 2013).  In so doing, the Court looks at the language itself, the context in which the language is used, as well as "the broader context of the statute as a whole."  *Id.* (quoting *Country Vintner of N.C., LLC v. E. & J. Gallo Winer, Inc.*, 718 F.3d 249, 258 (4th Cir. 2013)).  When "the language at issue is . . . plain and unambiguous," the inquiry must end there.  *United States v. Abuagla*, 336 F.3d 277, 278 (4th Cir. 2003) (quoting *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2003)).

Section 1693f plainly enumerates the "errors" sufficient to trigger the EFTA's protection, to include the consumer's request for additional information or clarification "*concerning an*

8

*electronic fund transfer*" or "any documentation required by this subchapter." 15 U.S.C. § 1693f(f)(6) (emphasis added). The plain and unambiguous meaning of this provision imposes no further requirements on the nature of the correspondence sufficient to trigger statutory protection. *See id.*

Moreover, the EFTA's Regulation E supports this plain reading. The regulation includes as an "error" a "consumer's request for . . . additional information or clarification concerning an electronic fund transfer, *including* a request the consumer makes to determine whether any [other enumerated] error exists." 12 C.F.R. 1005.11(1)(vii) (emphasis added). The request itself must relate to an "electronic fund transfer," which could, but need not, pertain to another enumerated error. *See id.* Cook's request certainly related to an electronic fund transfer, and so, the Amended Complaint plausibly alleges a request sufficient to trigger the EFTA's protection. *See* ECF No. 23 ¶ 19; 15 U.S.C. 1693f(f)(6). To read it otherwise would impose an unnecessary restriction on the reach of the EFTA, in contravention to its broad remedial purpose. *See Curtis*, 915 F.3d at 241. Thus, the motion as to Count I is denied.

### B.     Breach of Contract (Count II)

Next as to the breach of contract claim, the Amended Complaint alleges that USAA breached the FSB Agreement in failing to timely investigate the disputed transfer or to provisionally credit his account. ECF No. 23 ¶¶ 49–57. At the pleading stage, "a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of the obligation by the defendant." *RRC Ne., LLC v. BAA Md. Inc.*, 413 Md. 638, 658 (2010) (citing *Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001)). That said, the plaintiff must plead with "certainty and definiteness" some facts that reflect the "contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant."

*Polek v. J.P. Morgan Chase Bank, N.A.*, 424 Md. 333, 362 (2012) (quoting *Cont'l Masonry Co. v. Verdel Constr. Co.*, 225 Md. 271, 276 (1977)).

The parties do not dispute that the FSB Agreement and Zelle TOS are valid and binding. Rather, USAA contends that the breach of contract claim fails because Cook waived all liability for USAA per the Zelle TOS. ECF No. 32 at 7; *see also* ECF No. 32-2 at 101. Cook concedes that the Zelle TOS governs the transactions but asserts that his contract claim is nonetheless covered under the FSB Agreement, which USAA breached when it failed to timely investigate his request for information. ECF No. 34 at 14. Because the FSB Agreement and Zelle TOS, read together, make plain that Cook gave up his right to hold USAA liable for claims arising from Zelle transactions, the contract claim must be dismissed. *See* ECF No. 32-2 at 96, 101.

Maryland follows the objective approach to contract interpretation. *Ocean Petroleum, Co. v. Yanek*, 416 Md. 74, 86 (2010).[2] Where a contract is unambiguous, the court construes it according to its plain meaning. *See id.* at 87. A court must give effect to each clause of the contract to avoid "an interpretation which casts out or disregards a meaningful part of the language of the writing unless no other course can be sensibly and reasonably followed." *Diamond Point Plaza Ltd. v. Wells Fargo Bank*, 400 Md. 718, 751–52 (2007). Moreover, "when a general provision seemingly conflicts with a specific provision, [the court] will give effect to the specific provision." *SVAP II Pasadena Crossroads LLC v. Fitness Int'l LLC*, 260 Md. App. 77, 93 (2023) (quoting *Pinnacle Grp., LLC v. Kelly*, 235 Md. App. 436, 456 (2018)), *cert. denied*, 478 Md. 34 (2024).

The contracts, read together, are unambiguous. The relevant provisions of the FSB Agreement set out an "error resolution procedure" for electronic fund transfers generally. *See* ECF No. 32-2 at 59. These electronic fund transfers can include Zelle transactions, but they also

---

[2] The parties do not dispute that Maryland law applies. *See* ECF Nos. 32-1 & 34.

10

encompass other "[e]lectronic payments, transfers and credits" made or received "via online banking, mobile banking and other electronic methods" that USAA makes available. *Id.* at 53. Whereas the more specific Zelle TOS applies to Zelle transfers only. *See id.* at 96. For Zelle transactions, the contract expressly disclaims liability as to USAA for "any damages" arising from "any transaction conducted through or facilitated" by Zelle, and "any matter relating to [Zelle] services described or provided." *Id.* at 101.[3]

Moreover, while the Zelle TOS explicitly incorporates by reference the FSB Agreement, that pertains only to "unauthorized transactions." *See* ECF No. 32-2 at 100. Here, by contrast, Cook authorized the Zelle transfers. *Compare* ECF No. 21 at 4 *with* ECF No. 23. Thus, the breach of contract claim concerns solely USAA's alleged failure to investigate any alleged error or fraud after Cook requested additional information or clarification. *See* ECF No. 23 ¶¶ 48–57. For this claim, the Zelle TOS clearly governs, and pursuant to the unambiguous waiver provision, Cook's breach of contract claim fails. *See* ECF No. 32-2 at 101. Count II is dismissed.

### C. MCPA Claim (Count III)

Next as to the MCPA claim, the Amended Complaint avers that USAA violated the MCPA by representing to consumers that Zelle is a "safe" method of transferring money, and by telling Cook that he did not timely alert USAA of the EFTA errors in the March 2022 letters. ECF No. 23 ¶¶ 62–63. USAA contends Cook fails to state an MCPA claim because Cook cannot

---

[3] This broad language seems to waive liability for all claims arising from Zelle transfers. *See* ECF No. 32-2 at 101. Curiously, USAA limits its waiver argument in the motion to the contract claim. *See* ECF No. 32-1 at 7–8. And only in reply does USAA assert that the Zelle TOS waives Cook's negligent misrepresentation claim as well. *See* ECF No. 35 at 6. Given that USAA raised the argument as to the negligent misrepresentation claim on reply, the Court will not consider it. *See EEOC v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013) (citing *Clawson v. FedEx Ground Package Sys., Inc.*, 451 F. Supp. 2d 731, 734–35 (D. Md. 2006)), *aff'd in part sub nom. EEOC v. Freeman*, 778 F.3d 463 (4th Cir. 2015). Accordingly, the Court confines the waiver analysis to the breach of contract claim.

make plausible that USAA made any misrepresentations on which Cook relied to his detriment. ECF No. 32-1 at 8–9.[4]

The MCPA prohibits any entity doing business in Maryland from engaging in "[u]nfair, abusive, or deceptive trade practices," including, representations that "[c]onsumer goods, consumer realty, or consumer services are of a particular standard, quality, grade, style, or model which they are not" related to "[t]he sale, lease, rental, [and] loan" of these consumer goods or consumer services.  Md. Code, Com. Law §§ 13-301(2)(ii), 13-303.  To state a claim under the MCPA, a plaintiff must plausibly aver that the defendant engaged in an unfair or deceptive practice or misrepresentation on which the plaintiff relied, and which caused actual injury.  *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d 249, 270 (D. Md. 2015) (citing *Stewart v. Bierman*, 859 F. Supp. 2d 754, 268–69 (D. Md. 2012)); *see also Bryant v. Koppers, Inc.*, 627 F. Supp. 3d 466, 477 (D. Md. 2022).

Where an MCPA claim sounds in fraud, it must also meet the heightened pleading standard articulated in Rule 9(b) of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 9(b).  That is, a plaintiff must plead "with particularity the circumstances constituting fraud," including, "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby."  *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (quoting Fed. R. Civ. P. 9(b); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999) (citation omitted)).

---

[4] USAA focuses its motion on the alleged misrepresentations about Zelle on USAA's website and does not address the claim that its March 2022 letters to Cook also amount to an MCPA violation.  *See* ECF No. 32-1. Because USAA asks to dismiss the claim in its entirety, the Court reviews all theories of liability for sufficiency. *See id.*  Further, because the Amended Complaint does not make any MCPA theory plausible, the Court must dismiss the claim entirely.  *See Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290–91 (4th Cir. 2021); *see also Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 586 (D. Md. 2016) ("where the face of a complaint plainly fails to state a claim for relief, the district court has 'no discretion but to dismiss it'" (quoting *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 655 n.10 (4th Cir. 2006))).

Viewing the Amended Complaint most favorably to Cook, no facts make plausible that USAA made particular misrepresentations on which Cook relied. *See* ECF No. 23. First, as to the website's claims regarding the safety of using Zelle, the Amended Complaint maintains that the statements are fraudulent because USAA knows that scammers induce victims like Cook to send money via Zelle. *Id.* ¶¶ 11–12. Fatally, however, the Amended Complaint omits key language from the FAQs that, when read together, defeat any claims of fraud. *See id.*; Zelle FAQ, USAA.com, https://www.usaa.com/support/banking/zelle (last accessed May 1, 2024) (hereinafter "Zelle FAQs").[5] As to the safety of using Zelle, the Zelle FAQs advise that "Zelle® is a convenient way to send, receive and request money quickly, safely and securely. *Get money to and from friends, family and people you know* who have a bank account in the U.S." Zelle FAQs (emphasis added). The Zelle FAQs also warn customers to "only send [money through Zelle] to someone *you know and trust*," because "money is sent directly to [the recipient's] bank account and cannot be cancelled." *Id.* (emphasis added). The plain language of the Zelle FAQs, therefore, expressly acknowledges the risks inherent in using Zelle to transfer money to strangers. *See id.* Accordingly, no facts make plausible that USAA hides, rather than advises of, the risks associated with using Zelle in the manner Cook used it. *See id.*; *Ayres*, 129 F. Supp. 3d at 270.

Cook also fails to state an MCPA claim as to the March 2022 letters. *See* ECF No. 23 ¶ 63. True, USAA's letters imply that Cook did not timely notify USAA of the disputed transactions, which the Amended Complaint plausibly alleges is false, but the Amended Complaint avers no facts to make plausible that Cook relied on these alleged misrepresentations, nor that they caused him injury. *See Ayres*, 129 F. Supp. 3d at 270; *cf. Marchese v. JPMorgan*

---

[5] The Amended Complaint incorporates the FAQs by reference. *See Pulte Home Corp. v. Montgomery Cnty.*, 271 F. Supp. 3d 762, 769–70 (D. Md. 2017) (quoting *Phillips v. LCI Intern., Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)), *aff'd*, 909 F.3d 685 (4th Cir. 2018).

13

*Chase Bank, N.A.*, 917 F. Supp. 2d 452, 466–67 (D. Md. 2013) (finding plaintiff alleged injury under the MCPA where bank made multiple misleading statements to him directly and he pleaded that he suffered emotional and physical distress, late fees, attorneys' fees, and damaged credit because he relied on these statements).  In fact, when construing the Amended Complaint most favorably to Cook, at best he alleges that the failure to investigate itself injured him, but not that he somehow relied on USAA's statements regarding his untimely notification.  *See* ECF No. 23 ¶ 40 (alleging the lack of investigation damaged Cook).  Thus, the Amended Complaint fails to state an MCPA claim.  The motion is granted as to Count III.[6]

### D. Negligent Misrepresentation (Count V)

Last as to the negligent misrepresentation claim, the Amended Complaint contends that USAA made several material misrepresentations to Cook, including: (1) that Cook's queries did not constitute "errors" under the EFTA; (2) that USAA cannot prevent all perpetrators of fraud from using USAA's systems; (3) USAA could not help Cook obtain his fraudulently taken funds nor aid authorities to prevent future fraud; (4) and Cook's report of the alleged errors was untimely.  ECF No. 23 ¶¶ 65.a–e.  USAA, in turn, contends that Cook's negligent misrepresentation claim fails because it is barred by the economic loss doctrine.  ECF No. 32-1 at 9–10.  The Court agrees with USAA.

To state a claim for negligent misrepresentation, a plaintiff must make plausible that "(1) the defendant, owing a duty of care to the plaintiff, negligently assert[ed] a false statement; (2) the defendant intend[ed] that his statement [would] be acted upon by the plaintiff; (3) the defendant ha[d] knowledge that the plaintiff [would] probably rely on the statement, which, if

---

[6] USAA also contends that its provision of Zelle services falls outside the ambit of the MCPA.  *See* Md. Code, Com. Law § 13-303; ECF No. 32-1 at 8.  Although the Court is not persuaded, *cf. Margolis v. Sandy Spring Bank*, 221 Md. App. 703, 716 (2015) (analyzing an MCPA claim when bank made false misrepresentations in its provision of services), it need not reach the argument.

14

erroneous, [would] cause loss or injury; (4) the plaintiff, justifiably, [took] action in reliance on the statement; and (5) the plaintiff suffer[ed] damages proximately caused by the defendant's negligence." *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 135–36 (2007) (citation omitted). However, where the claimed negligence arises from a breach of contract, the economic loss doctrine bars recovery absent special circumstances not plausibly averred in the Amended Complaint. *See Potomac Constructors, LLC v. EFCO Corp.*, 530 F. Supp. 2d 731, 737 (D. Md. 2008) (citing *Lloyd*, 397 Md. at 123; *U.S. Gypsum Co. v. Mayor & City Council of Baltimore*, 336 Md. 145, 156 (1994)).

The economic loss doctrine derives from the principle that "[t]he mere negligent breach of contract, absent a duty or obligation imposed by law independent of that arising out of the contract itself, is not enough to sustain an action sounding in tort." *Jacques v. First Nat'l Bank of Md.*, 307 Md. 527, 534 (1986) (quoting *Heckrotte v. Riddle*, 224 Md. 591, 595 (1961)); *see also Donnelly v. Branch Banking & Trust Co.*, 91 F. Supp. 3d 683 (D. Md. 2015). To decide whether the economic loss doctrine bars recovery for claimed negligence, the Court considers (1) "the nature of the harm likely to result from a failure to exercise due care" and (2) "the relationship between the parties." *Jacques*, 307 Md. at 534.

As for nature of the harm, "where the risk created is one of personal injury, no such direct relationship [between the parties] need be shown." *Jacques*, 307 Md. at 535; *see also Potomac Constructors*, 530 F. Supp. 2d at 737 (the doctrine does not apply where a plaintiff seeks to "recover for the cost of correcting negligently created defects that produce 'a substantial and unreasonable risk of death or personal injury.'" (quoting *Council of Co-Owners Atlantis Codo., Inc. v. Whiting-Turner Contracting Co.*, 308 Md. 18, 34 (1986); *Lloyd*, 397 Md. at 123–24)). Reading the Amended Complaint most favorably to Cook, no such harm is pleaded. *See* ECF

15

No. 23. Nothing suggests that USAA ever placed Cook at risk of "death or personal injury." *See id.* Instead, the claimed injury focuses solely on the loss of the funds transferred via Zelle. *See id.* at 15. Thus, the economic loss doctrine appears to cover the claim.

As for the relationship between the parties, it is well settled that in Maryland, no special fiduciary duties arise between a bank and its customer, and that without more, the relationship is purely contractual. *See, e.g.*, *Parker v. Columbia Bank*, 91 Md. App. 346, 367–69 (1992). Accordingly, where a negligence claim avers no additional facts "sufficient to transform an ordinary contractual relationship between a bank and its customer into a fiduciary relationship," the claim fails as a matter of law. *Id.*; *see also Spaulding*, 920 F. Supp. 2d at 620.

Reading the Amended Complaint most generously to Cook, no facts make plausible that any special relationship exists with USAA. *See Parker*, 91 Md. App. at 367–69; *see also Mitchell v. U.S. Bank Nat'l Ass'n*, No. PX-17-1805, 2018 WL 4679949, at *5 (D. Md. Sept. 28, 2018) (economic loss doctrine precludes recovery where negligence claim is merely a repackaged wrongful foreclosure challenge); *Green v. Wells Fargo Bank*, N.A., 927 F. Supp. 2d 244, 251–53 (D. Md. 2013), *aff'd*, 582 F. App'x 246 (4th Cir. 2014) (loan servicer owed no special duty to borrower with respect to loan modifications); *cf. Jacques*, 307 Md. at 540 (finding a special relationship where bank knowingly left plaintiffs "particularly vulnerable and dependent upon the Bank's exercise of due care."). The Amended Complaint concerns solely the agreement for customer use of Zelle to transfer money. *See* ECF Nos. 23 & 32-2. And at bottom, Cook pursues damages based on USAA's failures to honor its obligations in that regard. *See* ECF No. 23 at 15. Because no other facts give rise to any fiduciary duties necessary to sustain a negligence claim, the economic loss doctrine bars suit. *See Parker*, 91 Md. App. at 367–69. Count V is thus dismissed.

**IV.     Dismissal With or Without Prejudice**

USAA urges the Court to dismiss all claims with prejudice. *See* ECF No. 32-1 at 10–11. The Court retains wide discretion when deciding whether to dismiss claims with or without prejudice. *See Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Generally, when a plaintiff has not been afforded an opportunity to amend the complaint, dismissal should be without prejudice. *See Glover v. Loan Science, LLC*, No. 8:19-01880-PWG, 2020 WL 3960623, at *3 (D. Md. July 13, 2020) (citing *Adams v. Sw. Va. Reg'l Jail Auth.*, 524 F. App'x 899, 900 (4th Cir. 2013)). The Court has already permitted amendment once to provide Cook the opportunity to plead his best case, so it is loath to allow further amendment. *See* ECF No. 21. This is especially so when the claims suffer from legal defects that make the claims unamendable. *See Cozzarelli v. Inspire Pharms. Inc.*, 549 F.3d 618, 630 (4th Cir. 2008).

The contract claim is barred under the plain language of the governing agreements. *See* ECF No. 32-2 at 101. The MCPA claim lacks any detrimental reliance, and the negligent misrepresentation claim is barred under the economic loss doctrine. *See* ECF No. 23 ¶¶ 59–72; *Parker*, 91 Md. App. at 367–69; *Ayres*, 129 F. Supp. 3d at 270. At this juncture, the facts and circumstances surrounding the Zelle transfers has been exhaustively pleaded not once but twice. *See* ECF Nos. 1 & 23. The Court has also reviewed Cook's declaration, *see* ECF No. 34-1, which in combination with the Amended Complaint facts, still do not make the claims plausible, *see* ECF No. 23. Because no further amendment would fix the problems inherent in the dismissed claims, dismissal is with prejudice.

## V.     Conclusion

For the foregoing reasons, the Court grants in part and denies in part the motion to dismiss.  A separate Order follows.

<u>September 16, 2024</u>                    /s/
Date                                                           <u>                                         </u>
                                                               Paula Xinis
                                                               United States District Judge